### RICHARDS et al. v. VAN EVERY. *
(No. 1964.)

(Court of Civil Appeals of Texas. Amarillo. June 14, 1922. Rehearing Denied June 28, 1922.)

I. Mines and minerals ⬸109—Party letting contract to drill held not given the right to suspend drilling at any time.

A provision in a drilling contract that the party letting the contract shall have the right and option to cause the work to stop at any time after giving notice of his intention so to do, and shall be obligated to pay for any work after notice of his intention to abandon the work, did not give him the right to suspend drilling at any time.

2. Mines and minerals ⬸109—Shutdown held to come without provision for payment for delays caused by party letting contract to drill.

Where, after being notified that parties contracting to drill were forced to shut down for lack of water which was to be furnished by the party letting the contract, the latter wired them to let the drillers go, and stop expense until he got there, a shutdown in obedience to this instruction did not come within provisions for suspending or abandoning work, and is governed by a provision for payment for delays caused by him.

3. Trial ⬸350(4)—Evidence held sufficient to raise requested issues in an action on oil well drilling contract.

In action on an oil drilling contract for payments for delays caused by party letting contract, evidence that the latter, on being notified of a shutdown for lack of water which he was to furnish, telegraphed to let the drillers go, and shut down well and stop expense until he got there, but to keep watchman at well, and that he would pay the expense, and, if necessary, to have wheel fixed or other work done about derrick, was sufficient to raise requested issues as to whether delay was due to his instructions to wait until his return, and

whether he intended to abandon further work, and gave notice thereof.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by M. L. Richards and another against Thomas Van Every. From a judgment for defendant, plaintiffs appeal. Reversed and remanded.

Weeks, Morrow & Francis, of Wichita Falls, for appellants.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellee.

HALL, J. After a careful review of the record, in the light of the motion for rehearing and the reply thereto, we have concluded to grant the motion. The appellants, M. L. Richards and G. C. Cull, sued appellee, Van Every, declaring upon two written contracts made exhibits to their petition. Exhibit A is a contract between Van Every, as party of the first part, and appellants, as second parties, dated April 20, 1920, and provides for the drilling of an oil well on what is known as the Van Loh property. Exhibit B is a contract between the same parties for the sale of a star rig, and has no bearing upon the issues presented here. Only the following paragraphs of Exhibit A need be considered as pertinent to appellant's contentions:

"Fourth. First party agrees to furnish water and fuel, but the cost of running said water to the lease shall be borne by the second party. The first party, however, shall furnish pump and pipe lines reasonably necessary therefor; however, that, if, on account of a drouth or other reason, it becomes impracticable for first party to secure water or fuel, and a shutdown in drilling results, then the second party shall have the right to discontinue such drilling operations at that time, and shall be at liberty to secure other drilling contracts; provided, further, however, that, so soon as such water or fuel is found practicable to be secured, second party bind and obligate themselves to return to the hole thus left, and resume operations therein without delay, after finishing such contract which said second party may have entered into."

"Twelveth. Any and all delays caused by the first party except as may be herein specifically covered, or for the time incurred in testing, baling or swabbing said well, first party shall pay second party the sum of $100 per day for such delay.

"Thirteenth. Second party further bind and obligate themselves to drill said well in a good and workmanlike manner and to use all diligence to complete the same as soon after drilling shall start as practicable, and it is contemplated in this contract that, after drilling operations shall start, unless delays shall occur, as herein contemplated, the drilling thereof shall be continuous until said well shall have been fully completed.

"Fourteenth. The first party shall have the

right and option to cause the work upon said leases to stop at any time after giving notice to second party of his intention so to do and first party shall be obligated to pay second party for any work on the drilling of said well after notice to them of his intention to abandon the work thereon, and it is further provided that at the election of the first party sands drilled into or through in the drilling of said well shall be thoroughly tested out in accordance with the terms of this contract."

Based upon the contract designated above as Exhibit A, the appellants sued to recover five different items of damages, only one of which is the basis of this appeal. This is a claim for $14,500, alleged to be due them for 145 days' delay from July 23 to December 16, 1920, at $100 per day. With reference to this contract and their rights under it, the appellants plead as follows:

"That on the 20th day of July, 1920, these plaintiffs, due to the lack of water on said leasehold estate, suspended their drilling operations thereon, and on the 20th day of July, 1920, by telegram notified the said defendant Van Every of such shutdown and the reasons therefor. These plaintiffs further informed the court, that by virtue of the lack of water as aforesaid, they were unable to continue said drilling operations, and were delayed for a period of three days from the 20th day of July, 1920, to the 23d day of July, and by virtue of such contract there is now due and owing said plaintiffs the sum of $300 for the said three days' delay, which said sum the defendant refused, and still refuses, to pay in, whole or in part, and which said sum is fully due these plaintiffs.

"That, subsequent to the drilling operations as aforesaid, on the 23d day of July, 1920, the defendant telegraphed to these plaintiffs the following instructions, to wit: 'Let the drillers go and shut down well and stop expense until I get there. But be sure and keep watchman at well night and day. I will pay expense of watchman. If it is absolutely necessary to have bull wheel fixed or other work in and about the derrick, have it done. I am writing you to-morrow.' Acting in accordance with these instructions, plaintiffs discharged all the workmen employed by them on said well and leasehold estate, and, acting further according to the desire of said defendant Van Every, employed a watchman to guard the said leasehold estate and the property thereon; that, subsequent to the receipt of said telegram as aforesaid, these plaintiffs repeatedly requested the defendant to pay them the sum of money due under the said contract, which the defendant has refused and still refuses to pay.

"Plaintiff further states that, under the terms of said contract, the defendant agreed to pay to the said plaintiffs the sum of one hundred dollars per day for each and every day the operations on said lease were suspended, or that there occurred a delay in the drilling operations on said lease, due to the failure of the defendant to furnish water and fuel, and also for any and all delays caused by the defendant. Plaintiffs state as aforesaid the defendant Van Every suspended operations by his telegram dated July 23, 1920, and has since said time refused to pay to the said plaintiffs the sum of

money due them for the drilling of the well to its present depth, and in willful disregard of said contract, and in violation of the rights of the plaintiffs under the same, defendant has totally abandoned the drilling operations on said lease; that the drilling operations were suspended by the act of the defendant continuously from and after July 23, 1920, up to and inclusive of the 16th day of December, 1920, making a total period of 145 days; that under said contract the defendant was liable to the plaintiffs at the rate of $100 per day for all delays incurred by the act of the defendant, and these plaintiffs have requested the defendant to pay them the sum of $14,500 which is fully due and owing to these plaintiffs under the contract, and the defendant has refused," etc.

The defendant answered by general denial, and specially alleged that he was not liable for the 145-day shutdown, because the contract authorized him to abandon the work at any time, and because, in the event the well was shut down for want of water, the contract provided that Richards and Cull had the right to remove their rigs. The court submitted three issues concerning which appellants contend there is no controversy. We sustain this contention. It is further insisted that the court erred in not submitting the following issues requested by appellant:

"No. 4. Was the delay after July 23, 1920, up to September 16, 1920, due to instructions of defendant to plaintiffs to wait until his return before resuming operations?

"Fifth. Did defendant, after he returned to Texas on September 16, 1920, instruct the plaintiffs to resume drilling operations, or did he fail to give the plaintiffs any instructions and information with respect to the well?

"Sixth. Did the defendant intend at the time he sent the telegram of date July 23, 1920, to abandon any further work on the well?"

"No. 1. Do you find from the contract in question and from the evidence in the case that the defendant Van Every, on the 23d day of July, 1920, gave plaintiffs a notice of his intention to abandon the work on the Van Loh well?"

[1-3] In our former opinion we arrived at the conclusion that, under paragraph 14, supra, Van Every had the right to suspend drilling at any time. We have concluded that we were in error. After being notified that appellants had been forced to shut down on July 20th for a lack of water, the appellee wired them July 23d to let the drillers go and to stop expense until he got there. A shutdown in obedience to this instruction would not come within any of the special provisions for suspending or abandoning the work, and we think is governed by the twelfth paragraph, supra, providing that, for any and all delays caused by Van Every other than those specially provided for, he shall pay the appellants the sum of $100 per day. The evidence discloses that Van Every returned to Wichita county about September 16th; that a contention arose between the

parties as to an amount due as rental for certain tools left upon the premises by the appellants; and that the suspension continued until the 16th day of December, 1920. We do not find the above-quoted telegram of July 23d in the statement of facts, but without objection witnesses have testified, giving its contents. Since the judgment must be reversed, we express no opinion as to its force or effect further than to say that it is sufficient to raise the issues requested by appellants, set out above, and which were refused by the court. We therefore withdraw the former opinion, grant the motion for rehearing, reverse the judgment, and remand the case.

Reversed and remanded.